UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

KX REINSURANCE CO.,

        Petitioner,

- against -

GENERAL REINSURANCE CORP. and
NORTH STAR REINSURANCE CORP.,

        Respondents.

------------------------------------------------------X

OPINION AND ORDER

08 CIV. 7807(SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/14/08

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

This action arises out of a consolidated arbitration proceeding (the "Arbitration") between petitioner KX Reinsurance Company ("KX") and respondents North Star Reinsurance Corporation ("North Star) and General Reinsurance Corporation ("Gen Re") pursuant to 9 U.S.C. §§ 1-2, 6, 9-10, 12, 201–203 and 207; and Article V of the Convention on the Recognition of Foreign Arbitral Awards (the "Convention"). KX seeks to confirm the award issued by a three-member panel of arbitrators (the "Panel"), with the exception of a provision stipulating that the Panel will remain in effect until all the parties expressly request that it desist (the "Retention of Jurisdiction Provision"), which KX seeks to

1

vacate.[1] For the reasons stated below, KX's motion is granted in its entirety.

## II. FACTUAL BACKGROUND

KX is an English corporation that is engaged in the reinsurance business.[2] North Star and Gen Re are American corporations incorporated in Delaware, with their principal place of business in Connecticut, and a license to engage in the insurance and reinsurance business in New York.[3] Subject matter jurisdiction is appropriate under 9 U.S.C. § 203, or alternately, 28 U.S.C. § 1332(a)(2).[4]

Between 1975 and 1979, respondents individually entered into

---

[1] In the event that KX's motion to vacate in part is not granted, KX asks that the court remand the matter to the arbitrators with instructions that they "identify with specificity the matters over which they believe they can legitimately exercise jurisdiction." KX Reinsurance Co.'s Petition to Confirm in Part and Vacate in Part Final Arbitration Award ("KX Pet.") ¶ 19.

[2] *See id.* ¶ 1.

[3] *See id.* ¶¶ 4-5.

[4] Under 9 U.S.C. § 203, United States district courts have original jurisdiction over an action or proceeding arising under the Convention. 9 U.S.C. § 202 states that: "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention." 28 U.S.C. § 1332(a)(2) provides that: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state."

2

several excess of loss treaties ("Treaties") with KX.[5] The Treaties contained an arbitration clause requiring arbitration of "any dispute arising between the [parties] with respect to the interpretation of this Agreement or the rights of the parties in connection with any transaction hereunder."[6] The arbitrators have the discretion to award appropriate relief, and in so doing "are relieved from all judicial formalities and may abstain from following the strict rules of law" so that the arbitrators "shall make their award with a view to effecting the general purpose of this Agreement in a reasonable manner rather than in accordance with the literal interpretation of the language."[7] Decisions rendered by the majority "shall be final and binding upon the contracting parties."[8]

Both North Star and Gen Re initiated separate arbitration proceedings against KX on April 19, 2007 seeking to collect money they claimed was owed to them by KX.[9] The parties each sought the following relief in arbitration: a) "An Interim Award requiring [KX] to post security for . . . the full amount of its

---

[5] *See* Brief of Respondents in Opposition to Petitioner's Petition to Confirm in Part and Vacate in Part ("Resp. Br.") at 3.

[6] KX Pet. ¶ 15.

[7] *Id.*

[8] *Id.*

[9] *See id.* ¶¶ 20, 23.

3

outstanding balances and current outstanding reserves under the treaties;" b) "A Final Award requiring [KX] to pay the total outstanding balances . . . plus additional balances that may thereafter become due;" c) " Final Award requiring [KX] to post acceptable security for its share of the outstanding balances;" d) "A Final Award requiring [KX] to post acceptable security for its share of [respondents'] reserves on a going forward basis;" and e) "An award of interest, attorney's fees, and other appropriate relief."[10] At respondents' requests, KX agreed to consolidate their arbitration demands into a single proceeding.[11]

On November 7, 2007, the Panel issued an Interim Order granting respondents' request that KX be required to post a letter of credit for any existing outstanding balances and reserves.[12] The Interim Order allowed respondents to "request additional security" after February 15, 2008, but did not set an end date on their right to do so.[13] KX subsequently applied to reduce the Interim Order on the basis of claims it had settled after the arbitration proceedings commenced.[14]

---

[10] Resp. Br. at 5.

[11] *See id.* at 6.

[12] *See id.*

[13] *Id.*

[14] *See* KX Pet. ¶¶ 38-39.

4

The Panel approved the request and similarly allowed KX the opportunity "to request further deductions . . . based on future payments made" after February 15, 2008, without setting a cut off date.[15]

On March 25, 2008, KX sent an email to respondents' attorneys and the Panel with various proposals for expediting the remaining claims and reducing costs. In the email, KX articulated its decision to "withdraw its arguments concerning its obligation to comply with the letter of credit clauses in the treaty," which was the subject of the Interim Order.[16] In turn, respondents drafted a stipulation declaring that KX would withdraw, "with prejudice," all of its "defenses to its obligation to post letters of credit" related to the treaties; that all of the letters of credit posted pursuant to the Interim Award "shall remain in full force and effect after [the] arbitration is finally concluded," and that the stipulation "may be disclosed by either party in any future arbitrations or legal proceedings" between them.[17] KX did not execute the agreement.[18]

---

[15] Resp. Br. at 7.

[16] 3/25/08 Email from Petitioner's Counsel to Respondents' Counsel, Ex. 7 to Affidavit of Vincent J. Proto on Behalf of Respondents in Opposition to KX's Petition to Confirm in Part and Vacate in Part ("Proto Aff.").

[17] 4/22/08 Email from Respondents' Counsel to Petitioner's Counsel, Ex. 8 to Proto Aff.

[18] *See* Resp. Br. at 7.

The Panel issued its ruling on June 5, 2008 (the "Award").[19] Acknowledging KX's decision to withdraw its arguments concerning the letter of credit clauses in the treaties and its obligation to comply with the provisions, the Panel made its November 7, 2007 Interim Order a formal provision of the Award.[20] With respect to "the specific claims raised at the hearing," the Panel determined that KX must pay on the five remaining claims.[21] These included three claims presented by North Star (PMA/Hamilton, Northbrook/Kaiser and Liberty Mutual/Zorn) and two claims presented by Gen Re (Highlands/Texas and Mosanto).[22] The Panel also ordered KX to pay interest to respondents, as well as

---

[19] *See* KX Pet. at ¶ 47. Respondents stress that "[t]he panel did not denominate the Award a 'final award,'" instead titling it "Award of the Panel." Resp. Br. at 8. Nonetheless, the Panel introduced its ruling by stating: "the Panel, having reviewed the parties' testimony, documentary evidence, and argument presented at the hearing in this matter . . . and having therefore deliberated, rules as follows. . ." 5/6/08 Award of the Panel ("5/6/08 Award"), Ex. 15 to Notice to Gen Re of Petition to Confirm in Part and Vacate in Part Final Arbitration Award ("Pet. Not.").

[20] 5/6/08 Award.

[21] *Id.*

[22] *See id.* While the initial arbitration demands submitted by respondents show more claims than those adjudicated, KX contends that "[b]ecause KX Re had adjusted and settled many of the claims that comprised the amounts sought in the North Star and Gen Re arbitration demands, there were only five claims within the scope of the parties' submissions and concerning which there was any meaningful dispute." *Id.* at 11.

their attorney's fees, costs and expenses.[23] Respondents' requests for damages arising out of KX's bad faith were denied, as was their request for a claims protocol governing future claims handling procedures.[24] The Panel noted that any "other requests put forward by the parties that have not already been addressed in this Award are hereby denied."[25] The Panel reserved the right to retain jurisdiction: "The Panel will remain duly constituted until such time as all parties request that we stepdown [sic]."

KX seeks to confirm all aspects of the Panel's ruling with the exception of the Retention of Jurisdiction provision.[26] KX complied with the Award by paying the full amount on the outstanding balances for the five claims under the Panel's purview; the total interest accrued on the claims; and respondents' attorney's fees, costs and expenses.[27] Additionally, KX acceded to Gen Re's subsequent request that it post additional security to secure reserves on

---

[23] *See* 5/6/08 Award.

[24] *See id.*

[25] *Id.*

[26] *See id.* at 15.

[27] *See* Resp. Br. at 9.

7

claims that were not addressed in the Award.[28]

Following its payment of damages under the Award and its posting of additional security, KX requested that "the Panel members confirm that the Panel has now disbanded," since, in light of the full implementation of the Award, "the [P]anel's work is done and its authority has terminated."[29] Respondents opposed the disbandment of the Panel on the dual grounds that KX "had yet to pay balances due on several claims that were not addressed by the Panel in the Award" and, additionally, ought to post additional security to avoid a collateral shortfall for Gen Re's case reserves in the event that KX withdrew the funds to satisfy its outstanding balances.[30] After another round of arguments by both sides, the Panel rejected KX's request that it disband.[31]

---

[28] *See id.*

[29] 8/14/08 Email from Petitioner's Counsel to Respondents' Counsel, Ex. 16 to Pet. Not.

[30] Resp. Br. at 10. Respondents advised the Panel that they expected to request KX to update its posted security by the end of the year. *See id.*

[31] *See id.* As of September 30, 2008, respondents allege that KX has failed to pay billings timely and owes an outstanding balance of $149,971 in claims and $103,000 in underfunded reserves. *See* Resp. Br. at 10-11.

8

## III. LEGAL STANDARD

### A. Confirmation of Arbitration Award

The confirmation of an arbitration award is a summary proceeding that converts a final arbitration award into a judgment of the court.[32] "It is well established that courts must grant an arbitration panel's decision great deference."[33] "'Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'"[34] "'The showing required to avoid summary confirmation of an arbitration award is high.'"[35] "A court is

---

[32] *See Yusef Ahmed Algahanim & Sons v. Toys "R" Us*, 126 F.3d 15, 23 (2d Cir. 1997) (citing *Florasynth, Inc. v. Pickholtz*, 750 F.2d 171, 176 (2d Cir. 1984)). The Federal Arbitration Act ("FAA") states that if "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award." 9 U.S.C. § 9.

[33] *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).

[34] *Willemijn Houdstermaatschappij, BV v. Standard Microsystems*, 103 F.3d 9, 12 (2d Cir. 1997) (quoting *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993)).

[35] *Id.* (quoting *Ottley v Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)).

9

required to confirm the award unless a basis for modification or vacatur exists."[36]

In order for an award to be enforceable, it must be final.[37] An arbitration award is final where it "resolve[s] all the issues submitted to arbitration," and "resolve[s] them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication."[38]

### B. Vacatur of Arbitration Award

The FAA enumerates specific instances in which an award may not be confirmed. These include: 1) award was procured by corruption, fraud, or undue means; (2) arbitrators exhibited evident partiality or corruption; (3) arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior that prejudiced the rights of any

---

[36] *Insurance Co. of N. America v. Ssangyong Eng'g & Const.*, No. 02 Civ. 1484, 2002 WL 377538, at *4 (S.D.N.Y. Mar. 11, 2002).

[37] *See* 9 U.S.C. § 10(a)(4) (providing for rejection of confirmation "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, *final*, and definite award upon the subject matter was not made.") (emphasis added).

[38] *Rocket Jewelry Box v. Noble Gift Packaging*, 157 F.3d 174, 176 (2d Cir. 1998).

10

party; or (4) arbitrators exceeded their powers or so imperfectly executed their powers that a mutual, final, and definite award upon the matter submitted was not made.[39] The party moving to vacate the award has the burden of proof.[40]

Courts "have 'consistently accorded the narrowest of readings' to the FAA's authorization to vacate awards pursuant to [section] 10(a)(4)."[41] In determining whether the decision of an arbitration panel can be vacated on the basis of section 10(a)(4), the only question is "'whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'"[42] "[T]he central purpose of the [FAA is] to ensure 'that private agreements to arbitrate are enforced according to their terms.'"[43] "Arbitration under the [FAA] is a matter of

---

[39] *See* 9 U.S.C. § 10(a).

[40] *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2007) (citing *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 12).

[41] *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) (quoting *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002)).

[42] *Banco de Seguros del Estado*, 344 F.3d at 262 (quoting *Westerbeke Corp.*, 304 F.3d at 220.

[43] *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit . . . [and] they may limit by contract the issues which they will arbitrate."[44] In other words, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration."[45] "Where an arbitration clause is broad . . . arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself."[46]

The power granted to arbitrators is determined and circumscribed by the issues submitted for their determination.[47] "'[O]nce an arbitration panel decides the submitted issues, it becomes functus officio and lacks any further power to act.'"[48] The only three exceptions to the functus officio doctrine concern

---

[44] *Id.* at 57 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985)).

[45] *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995).

[46] *Banco de Seguros del Estado,* 344 F.3d at 262 (citing *AT & T Technologies, Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 651(1986)).

[47] *See Ottley,* 819 F.2d at 376.

[48] *Id.* (quoting *Proodos Marine Carriers Co. v. Overseas Shipping & Logistics,* 578 F.Supp. 207, 211 (S.D.N.Y.1984)). *See also* 5 Am. Jur. 2d Arbitration & Award § 96, at 593 (1962) ( "Since the final determination by the arbitrators of matters in dispute fulfills the purpose of the submission, the

circumstances in which the award issued is ambiguous, has an error on its face, or does not adjudicate submitted issues.[49] Arbitrators do not have the power to monitor the parties' compliance with the Award, unless that authority is specifically conferred on them through the parties' submissions.[50]

## IV. DISCUSSION

### A. Arbitration Award Was Final

Before the Panel's Award can be confirmed or vacated, it must be determined to be final. Respondents note that the Panel did not specifically denote that its ruling constituted a final award. Nonetheless, the context and scope of the Panel's decision underscores its intention to the contrary. *First*, the arbitration clauses agreed to in the Treaties directed that, in the event of a dispute requiring arbitration, "the decision of the majority shall be final and binding upon the contracting parties."[51] *Second*, respondents specifically requested a "Final Award"

---

authority of arbitrators terminates with the making of a valid, final award.").

[49] *See Colonial Penn Ins. Co. v. Omaha Indemnity Co.*, 943 F.2d 327, 332 (3rd Cir. 1991).

[50] *See Ottley*, 819 F.2d at 376.

[51] Gen Re Corporation Treaties, Ex. 3 to Pet. Not.; North Star Corporation Treaties, Ex. 5 to Pet. Not.

in their demands for arbitration.[52] *Third*, the Panel introduced its ruling by noting that it had "heard and fully considered" all the evidence and arguments associated with the matters before them, and "thereafter deliberated" accordingly.[53] *Fourth*, the Panel specifically stated that "all other requests put forward by the parties that have not already been addressed in this Award are hereby denied."[54] As such, all the issues submitted to the Panel and within its province have been resolved, and the ruling issued on June 5, 2008 constitutes a final Award.

Because there is no dispute surrounding any portion of the Panel's ruling save the Retention of Jurisdiction provision, and in view of the extreme deference that must be accorded arbitrators' decisions, KX's request to partially confirm the Award is granted.

### B. Panel Exceeded the Scope of Its Authority in Retaining Jurisdiction After Adjudicating the Parties' Submitted Claims

In their opposition brief, respondents cited two reasons for their refusal to consent to the Panel's termination. First, they noted that KX had yet to "pay balances due on several claims *that were not addressed by the Panel in the*

---

[52] Pet. Not. ¶¶ 20, 23.

[53] 5/6/08 Award.

[54] *Id.*

14

*Award* and requested that the Panel stay in place until those balances were paid."[55] Respondents' assertion, however, directly overlooks the Panel's instruction that any claims not addressed in its Award should be deemed as refused. As such, while it may be "prudent and economical for the Panel to remain in place until those claims are resolved," as respondents suggest, it is not legally permissible according to the scope of authority granted to the Panel by the parties themselves.[56]

The second reason respondents provided to justify the Panel's continued existence was rooted in their anticipated request that KX post extra security. Respondents "advised the Panel that they expected to request KX Re to update the letters of credit *before the end of this year*" and wanted the Panel to remain in place until they had a chance to do so and until KX complied with the requests.[57] By their own admission, respondents had not submitted their claim for additional security in the arbitration demands. As such, it was outside the parameters of the Panel's authority.

The circumstances of the Award also do not fall under the limitations

---

[55] Resp. Br. at 10 (emphasis added).

[56] *Id.*

[57] *Id.* (emphasis added).

15

of the functus officio doctrine.[58] Neither party claims that there was an error on the face of the Award or an ambiguity in its implementation. Instead, respondents concede that KX made full payment of the damages due under the Award. All of the submitted issues were adjudicated by the Panel, either expressly or by their statement that such issue not mentioned in the decision was denied.

Respondents argue that they had in fact demanded arbitration with respect to "additional balances that may thereafter become due," but their contention is misleading, if not duplicitous.[59] Their arbitration demands requested relief for specific claims whose outstanding balances might accrue over the course

---

[58] Respondents cite several cases to support their argument that "[c]ourts routinely affirm the right of arbitrators to retain jurisdiction." Resp. Br. at 14. Beyond the fact that none of the cases cited are from the Second Circuit and do not constitute binding authority for this Court, the cases are also not analogous. *First*, in *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546 (6th Cir. 2004), the arbitrator was allowed to issue a supplemental award because it only clarified ambiguities within the original award and did not change it. As such, unlike the circumstances at hand, the case represents the limited exceptions to the functus officio doctrine. *Second*, in upholding an arbitration panel's retention of jurisdiction in *Certain Underwriters at Lloyd's London v. BCS Ins. Co.*, the Court specifically noted that one of the parties "sought this very relief in its post-hearing brief." 239 F. Supp 2d 812, 818 (N.D. Ill. 2003). In contrast, neither party asked the panel to retain jurisdiction in the instant case in their original submissions. *Third*, in *Engis Corp. v. Engis Ltd*, 800 F. Supp. 627 (N.D. Ill. 1992), an arbitrator was allowed to retain jurisdiction to ensure compliance with the award. Here, KX has already satisfied the damages imposed by the Panel.

[59] Resp. Br. at 16.

of the arbitration proceedings– "A Final Award requiring [KX] to pay the total outstanding balances . . . *plus additional balances that may thereafter become due.*"[60] It would circumvent the purpose of an Arbitration Panel – to definitively address a contentious issue without the delay, hassle, and expenditure associated with court proceedings[61] – to interpret the aforementioned language as requesting arbitration in advance on any balance that might become due during the life of the Treaties. Such an open-ended submission would effectively allow the Panel unlimited authority and the power to exist indefinitely, thereby conferring upon it an unintended judicial character and obviating its clear function as an alternative to judicial proceedings. It would also deprive KX of its implicit right under the Treaties to choose the arbitrators and umpires it deems most suitable to resolve the specific issues in contention.

For the same reasons, respondents' argument that the incorporation of the Interim Order into the final ruling enabled the Panel to remain in place to "address any future disputes that could arise between the parties regarding the

---

[60] *Id.* at 5 (emphasis in original).

[61] *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967).

posting of letters of credit" is without merit.[62] Respondents imply that by specifying a date in the Interim Order *after* which parties could request additional security but not a date *before* which parties must do so, the Panel intended to retain jurisdiction. Such a reading belies the logical assumption that the end of the arbitration proceedings would constitute the cut off for further security requests. Even allowing, *arguendo*, that the Panel intended to issue such an open-ended ruling, there was no authorization for it to do so. The specific issues submitted to the Panel define and delineate its powers; by definition, it has no jurisdiction over any potential future disputes.

## V. CONCLUSION

For the foregoing reasons, KX's motion to confirm in part and vacate in part the Panel's award is granted in its entirety. The Clerk of the Court is directed to close this motion [Doc. Nos. 6 and 7].

---

[62] Resp. Br. at 16.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
November 14, 2008

## - Appearances -

**For Petitioner:**

Philip J. Loree Jr., Esq.
Loree & Loree
7 Bayview Terrace
Manhasset, New York 11030
(516) 627-1720
PJL1@LoreeLawFirm.com

**For Respondents:**

Joseph J. Schiavone, Esq.
Vincent John Proto, Esq.
Budd, Larner, P.C.
150 John F. Kennedy Parkway, CN 1000
Short Hills, New Jersey 07078
(973) 379-4800
JSchiavone@budd-larner.com
VProto@budd-larner.com